UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CALEDONIAN BANK & TRUST
LIMITED,

    Plaintiff,

v.                                                Case No.  8:13-cv-1470-T-30TGW

FIFTH THIRD BANK,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Fifth Third Bank's Motion to Dismiss (Dkt. 17) and Plaintiff Caledonian Bank & Trust Limited's Response in Opposition (Dkt. 20).  The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be denied.

## BACKGROUND

Plaintiff Caledonian Bank & Trust Limited, as trustee for and on behalf of Vicis Capital Master Fund ("Vicis") asserts claims of aiding and abetting fraud and civil conspiracy to commit fraud against Defendant Fifth Third Bank related to sham loans that Fifth Third provided to a defunct HMO, Quality Health Plans, Inc. ("QHP" or the "HMO"), in order to aide the HMO, its corporate affiliates ("QHP Entities" or the "affiliates"), and the owners, directors, and officers of the HMO and the affiliates (the "Khans") in making fraudulent misrepresentations to regulators and the investing public that the HMO had

unencumbered capital and was solvent. Specifically, Vicis' amended complaint alleges that the HMO and the affiliates were regulated by Florida and New York and were required to maintain sufficient capital in the form of unencumbered assets. Unknown to Vicis and prior to Vicis making substantial investments in the QHP Entities, the QHP Entities suffered extreme capital deficiencies that threatened their financial and regulatory existence. The Khans, working through the various QHP Entities, provided financial statements to Vicis that falsely represented the financial state of affairs of QHP and the QHP Entities to solicit and induce Vicis to invest a total of $30 million in the QHP Entities between April 28, 2008 and November 24, 2009.

Vicis alleges that, prior to its investment in the QHP Entities, Fifth Third made two sham loans to the QHP Entities during the time when QHP and the QHP Entities needed to report unencumbered capital to the Florida regulators in order to continue to operate: an $8.5 million loan on May 3, 2007, and a $6.7 million loan on December 28, 2007. Vicis contends that these loans were shams because the loan proceeds at all times remained in secured, restricted accounts at Fifth Third. Vicis states that Fifth Third also issued a $3 million letter of credit on behalf of QHP on September 2, 2009, under which Fifth Third never actually extended credit because Fifth Third required QHP to maintain $3 million in securities in an account controlled by Fifth Third for the duration of the purported letter of credit.

Vicis alleges that: Fifth Third incurred no credit risk in making the loans and issuing the letter of credit; Fifth Third made the loans knowing that they served no legitimate business purpose; Fifth Third took a prohibited senior lien in the Fifth Third controlled

account in which the HMO held the securities which secured the line of credit; the loans and the letter of credit were shams; and Fifth Third knowingly made the sham loans and issued the sham letter of credit to assist the Khans and the QHP Entities in defrauding regulators and the investing public by providing phantom capital for QHP to report on its financial statements.

Vicis states that Fifth Third held itself out as a healthcare financing expert that knew that QHP had to show minimum capital to operate in Florida. Vicis alleges that Fifth Third knew that the Khans and the QHP Entities would report the phantom capital from the sham loans and sham letter of credit on QHP's financial statements.

Vicis contends that, in reliance on the 2007 financial statements that falsely represented QHP's solvency and compliance with the minimum capital requirements based on the phantom capital, Vicis invested $20 million in the QHP Entities on April 28, 2008. Vicis invested an additional $10 million in the QHP Entities on November 24, 2009. Vicis states that QHP's financial statements for 2007, 2008, 2009, and 2010 were materially false and misleading because they misrepresented the financial solvency of the QHP Entities, particularly the QHP HMOs' capital amount. Vicis invested a total of $30 million into the QHP Entities based upon the false financial statements and remained invested therein, believing that the QHP HMOs were solvent and adequately capitalized.

Fifth Third provided substantial assistance in the form of the sham transactions (described above) to help the Khans and the QHP Entities propagate lies about the amount of capital held by QHP and the affiliates. Douglas A. Kimes, at all relevant times, was the

Senior Vice President at Fifth Third and the bank officer who handled Fifth Third's relationship with the Khans and the QHP Entities. Kimes' clients included HMOs. Kimes oversaw and executed the sham loan transactions that enabled the Khans and the QHP Entities to hide QHP's insolvency and inadequate capitalization.

Vicis alleges that the "capital ruses" facilitated by Fifth Third's sham loans and letter of credit went undetected for years. In November 2011, the Khans and the QHP Entities were finally exposed when the Florida Office of Insurance Regulation liquidated QHP after the State of Florida discovered that QHP had engaged in a similar $10 million sham "loan" transaction with another institution to create phantom capital that the State of Florida later described as "falsified assets." Several members of the Khan family were indicted for insurance fraud as a result of knowingly, and with intent, making false entries in reports submitted to the Office of Insurance Regulation, with the intent to conceal the impairment of QHP's capital.

Vicis discovered the existence of the sham loans and letter of credit during the discovery process in a related lawsuit against the Khans. This lawsuit subsequently ensued.

Fifth Third now moves to dismiss Vicis' claims of aiding and abetting fraud and civil conspiracy to commit fraud under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## **MOTION TO DISMISS STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and

view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Federal Rule of Civil Procedure 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

## DISCUSSION

### I. Aiding and Abetting Fraud

With respect to the claim of aiding and abetting fraud, Fifth Third first argues that such a claim may not be a recognized cause of action under Florida law. Courts that have considered the sufficiency of a claim for aiding and abetting fraud under Florida law have consistently assumed that the claim exists under Florida law. *See e.g. Wiand v. Wells Fargo Bank, N.A.*, 2013 WL 1401414, at *3 (M.D. Fla. April 5, 2013) (recognizing the claim and setting forth the elements of same); *Koch v. Royal Wine Merchants, Ltd.*, 907 F. Supp. 2d 1332, 1348 (S.D. Fla. 2012) (denying motion to dismiss aiding and abetting fraud claim); *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 371 (Fla. 5th DCA 2005) (concluding that a claim for aiding and abetting fraud may exist under Florida tort law and

setting forth the elements for said claim). Accordingly, Fifth Third's argument that such a claim may not exist is denied.

Next, Fifth Third argues that Vicis did not adequately plead the elements to sustain a cause of action for aiding and abetting fraud. "Virtually all courts that have acknowledged the existence of aiding and abetting a fraud state that the following are the elements that must be established by the plaintiff: 1. [t]here existed an underlying fraud; 2. [t]he defendant had knowledge of the fraud; [and] 3. [t]he defendant provided substantial assistance to advance the commission of the fraud." *Id*.

A review of the amended complaint demonstrates that Vicis pled sufficient factual allegations to establish each element of the claim for aiding and abetting fraud. Vicis alleges the underlying fraud: the Khans and the QHP Entities defrauded Vicis by misrepresenting QHP's solvency and compliance with the minimum capital requirement. Vicis states facts demonstrating Fifth Third's *knowledge* of the fraud: Fifth Third knew that the Khans and the QHP Entities would use the illusory capital created by the sham loans and letter of credit to misrepresent QHP's solvency to regulators and the investing public. Vicis alleges facts demonstrating Fifth Third's substantial assistance to advance the commission of the fraud: Fifth Third knowingly rendered substantial assistance to the Khans and the QHP Entities by generating phantom capital (in the form of the two sham loans and the sham letter of credit) to advance their fraudulent scheme. Vicis also alleges that it suffered damages as a result of its reliance on the fraudulent misrepresentations.

The amended complaint also alleges specific details necessary to assert a fraud claim under Fed. R. Civ. P. 9(b). The allegations, as summarized *supra*, state the circumstances constituting the fraud with particularity. Accordingly, Fifth Third's motion to dismiss the aiding and abetting fraud claim is denied.

## II.     Civil Conspiracy to Commit Fraud

Fifth Third argues that Vicis' claim for civil conspiracy to commit fraud fails to state a claim and fails to comport with Rule 9(b)'s heightened pleading standard. These arguments fail for the same reasons that they fail as to the aiding and abetting fraud claim.[1] To plead civil conspiracy to defraud, a plaintiff must allege "proof of an agreement between two or more people to achieve an illegal objective, an overt act in furtherance of that illegal objective, and a resulting injury to the plaintiff." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 912 (11th Cir. 1998).

The amended complaint alleges with sufficient details: (1) an agreement between the QHP Entities, the Khans, and Fifth Third; (2) to do an unlawful act - misrepresentation of QHP's solvency and compliance with the minimum capital requirement; (3) an overt act in furtherance of the conspiracy - the sham loans and letter of credit; and (4) damage to Vicis as a result of the conspiracy - Vicis' loss of its $30 million investment. Accordingly, Fifth Third's motion to dismiss the claim of civil conspiracy to commit fraud is denied.

It is therefore ORDERED AND ADJUDGED that:

---

[1] Fifth Third's motion to dismiss reads like a motion for summary judgment. It also applies an overly strict interpretation of the motion to dismiss standard. As Vicis points out, it does not have to allege *every* fact that occurred in order to state a plausible claim under Rule 12(b)(6).

1. Defendant Fifth Third Bank's Motion to Dismiss (Dkt. 17) is denied.

2. Defendant shall file an answer to the amended complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on September 17, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2013\13-cv-1470.mtdismiss.frm